IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JAMES HOWINGTON, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO. 11-0136-KD-M |
| | ) | |
| SMURFIT-STONE CONTAINER | ) | |
| CORPORATION/SMURFIT-STONE | ) | |
| CONTAINER CORPORATION | ) | |
| PENSION PLAN FOR HOURLY | ) | |
| EMPLOYEES, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

This action is before the Court on the defendants Smurfit-Stone Container Enterprises, Inc.,[1] (Smurfit) and Smurfit-Stone Container Corporation Pension Plan for Hourly Employees' (the Pension Plan) motion for judgment on the pleadings and brief in support, response filed by plaintiff James Howington, Jr., and defendants' reply. (Docs. 17-18, 22, 23). Upon consideration and for the reasons set forth herein, the motion is **DENIED.**

Findings of Fact[2]

Howington was an hourly employee at Smurfit's paper mill in Brewton, Alabama and he participated in the Pension Plan for hourly employees. (Doc. 1). Howington became disabled while working at Smurfit and his last day of work was September 27, 2007. (Doc. 1). Howington states

---

[1] Defendants state that Smurfit is now merged with RockTenn CP, LLC, and that it retains all the rights and obligations of Smurfit. The docket does not indicate that a motion for substitution of parties has been filed.

[2] On motion for judgment on the pleadings, the Court must "accept the facts presented in the complaint as true and view them in the light most favorable to the nonmovant." *Jiles v. United Parcel Service, Inc.*, 413 Fed. Appx. 173, 174 (11th Cir. 2011).

1

that the work environment at Smurfit was one of the primary causes of his disability. (Doc. 1).

On September 30, 2007, the paper mill was sold to Georgia Pacific Corporation but Howington's pension remained with the Smurfit Pension Plan. (Doc. 1, Doc. 14, Answer, p. 8). The last day of employment for all Smurfit employees was September 30, 2007. (Doc. 14, Answer, p. 8).

In January, 2008, Howington applied for Social Security disability but mistakenly stated in his application that the onset of disability occurred October 28, 2007, which was after he left employment with Smurfit on September 27, 2007. (Doc. 1). On June 2, 2009, Howington was awarded Social Security Disability benefits with an onset of disability date of October 28, 2007. (Doc. 1, Doc. 18, Smurfit's brief, p. 5).

On September 25, 2008, Howington filed an employment discrimination action against Smurfit. (Doc. 22, Howington's response, p. 3; Doc. 18, Smurfit's brief, p. 4; *see Howington v. Smurfit Stone Container Corporation, Inc.*, Civil Action No. 08-00552-CG-B (S.D. Ala. 2008)). Howington brought claims for hostile work environment and retaliation based on opposition to discriminatory practices pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq. (*Id.*)

On January 26, 2009, Smurfit and related entities filed a Chapter 11 petition for bankruptcy in United States Bankruptcy Court for the District of Delaware. (Doc. 18, Smurfit's brief, p. 5). Attachment 1 to the Voluntary Petition does not list the Pension Plan as an affiliated Debtor. (Doc. 18-2, p. 4). Howington's employment discrimination action was stayed. (*Id*). On August 28, 2009, Howington filed in Smurfit's Chapter 11 bankruptcy, a Proof of Claim showing the "Basis for Claim" as "employment discrimination". (Doc. 18, Smurfit's brief, p. 6, Doc. 18-6 & 7, Exhibit E).

In or near August 2009, Howington applied for long term disability through the Pension Plan. (Doc. 22, Howington's response, p. 3). Howington asked a Pension Plan employee whether

2

the Smurfit bankruptcy affected his disability claim and the "person told [him] that the bankruptcy had no bearing on [his] pension plan" and "said nothing about my filing a [disability] claim [in Bankruptcy Court] or that I needed to file a claim." (Doc. 22, Howington Affidavit, p. 11). Howington did not receive notice from Smurfit or the Pension Plan that it was in bankruptcy or that he should file a Proof of Claim as to the Pension Plan. (Doc. 22, Howington's response, p. 3-4).

On September 1, 2009, Howington's claim for long term disability was denied. (Doc. 22, Howington's response, p. 3; Exhibit B, p. 13). The "application was denied by the Pension Plan as it found that, based upon the Social Security [Administration's (SSA)] disability ruling, that [Howington] became disabled after he left employment with [Smurfit], thus he wasn't entitled to long term disability payments." (Doc. 1, p. 2, ¶ 13).[3] Howington asserts that he "left employment with [Smurfit] because he was disabled and unable to work, despite what he might have said in his Social Security disability claim." (Doc. 1, p. 3, ¶ 14).

On February 17, 2010, Howington settled his employment discrimination action and the claim in the bankruptcy action based thereon and executed a Settlement Agreement. (Doc. 18, Smurfit's brief, p. 6; Doc. 14-2, Answer, Exhibit 2). In the preamble to the Settlement Agreement, the parties define the "Pending Litigation" as the employment discrimination action filed in the Southern District of Alabama "together with any related litigation." (Doc. 14-2, p. 1). The Waiver of Claims and Release paragraph sets forth in relevant part that Howington waived and released Smurfit and other entities and individuals from claims and liabilities "arising from or in any way related to the Pending Litigation or Proof of Claim." (Doc. 14-2, p. 3). The Settlement Agreement also states that it "constitutes the entire agreement of the Parties with respect to these matters (and

---

[3] Howington identified Georgia Pacific as his employer in ¶¶ 13, 14 and 15, which conflicts with his allegations in ¶¶ 8 and 9. However, the complaint is clear that Howington's last day of work with Smurfit was September 27, 2007 (Doc. 1, ¶ 9) and that his Social Security application showed an onset of disability date of October 28, 2007 (Doc. 1, ¶ 11).

solely with respect to these matters). . ." (Doc. 14-2, p. 4).[4] Howington's claim for long term disability benefits under the Pension Plan as well as the denial of his claim, or any claim based upon the denial, are not mentioned in the Settlement Agreement. (Doc. 14-2). Howington did not "understand or intend to release any disability claim that [he] might have with [the] Pension Plan." (Doc. 22, Howington Affidavit, p. 11).

On June 21, 2010, the Bankruptcy Court confirmed Smurfit's Chapter 11 Plan of Reorganization and the Confirmation Order became effective on June 30, 2010. (Doc. 18, Smurfit's brief, p. 7). The Chapter 11 Plan rendered satisfied, discharged, and released all other obligations or liabilities of Smurfit and the related entities arising before June 30, 2010. (*Id.*).

At some time after July 2010, Howington received notice that the Pension Plan's decision to deny benefits had been upheld on appeal. (Doc. 22, Exhibits C, p. 14, Letter from Smurfit Stone Pension Service Center, dated July 13, 2010).

In December 2010, Howington wrote the Service Center about the denial and his letter was forwarded to the Pension Plan counsel. On January 12, 2011, the Pension Plan counsel responded that the denial would be reconsidered if Howington "were to provide a revised Social Security determination stating that he was disabled on September 27, 2007." (Doc. 22, Exhibit E, p. 16). Howington asked his Social Security Disability attorney to attempt to obtain a revised onset date but was told that "nothing could be done because more than 60 days had passed since the Administrative Law Judge's ruling." (Doc. 22, Howington Affidavit, p. 11).

On March 2, 2011, after review of the full Social Security Administration decision, the Pension Plan counsel wrote Howington and explained that "the [Pension] Plan administrator does

---

[4] The Settlement Agreement also states that it should be governed and construed in accordance with the law of Delaware and the Bankruptcy Code to the extent applicable. (Doc. 14-2, p. 4).

not make its own disability determinations" and further explained that the Pension Plan had relied upon the Social Security Administration's determination that Howington became disabled on October 28, 2007, after he left employment with Smurfit. (Doc. 22, Exhibit D, p. 15). Neither the Service Center employees nor the Pension Plan counsel at any time during these communications told Howington that his claim for benefits was barred by Smurfit's Chapter 11 bankruptcy or the release signed to settle his employment discrimination action. (Doc. 22, Howington Affidavit, p. 11-12).

On March 16, 2011, Howington filed this ERISA action seeking review of the denial of his claim for benefits under the Smurfit Pension Plan. (Doc. 1).

Statement of the law

Rule 12(c) of the Federal Rules of Civil Procedure addresses motions for judgment on the pleadings and states that "[a]fter the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is proper when no issues of material fact exist, and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts." *Jiles v. United Parcel Service, Inc.*, 413 Fed. Appx. 173, 174 (11th Cir. 2011), quoting *Cunningham v. District Attorney's Office for Escambia County.*, 592 F.3d 1237, 1255 (11th Cir. 2010) (quotations and citation omitted); *Jones v. Nordictrack, Inc.*, 236 F.3d 658, 660 (11th Cir. 2000)(citation omitted) ("Judgment on the pleadings is appropriate when no issues of material fact are raised in the pleadings and the movant is entitled to judgment as a matter of law."). In making this determination, the Court must "accept the facts presented in the complaint as true and view them in the light most favorable to the nonmovant." *Jiles*, 413 Fed. Appx. at 174 (citation omitted).

Attachments to pleadings may be incorporated by reference, and the motion for judgment on

the pleadings not converted into a motion for summary judgment,[5] if the attachment "is central to one of the claims and its authenticity is undisputed." *Horsley v. Feldt*, 304 F.3d 1125, 1133-1135 (11th Cir. 2002) (footnotes omitted) (Applying the Rule 12(b)(6) incorporation by reference doctrine to find that an "AP article attached to the amended answer should be considered as part of the pleadings for Rule 12(c) purposes, because that article is central to one of the claims and its authenticity is undisputed.").

Analysis

Howington brings his claim to recover benefits under the Pension Plan pursuant to Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a)(1)(B),[6] the civil enforcement provision of the Act. Howington alleges that he became totally and permanently disabled while working for Smurfit which resulted in terminating his employment in September 2007. Howington alleges that the Pension Plan refused to pay disability benefits because it wrongfully determined that he became disabled on October 28, 2007, after leaving employment with Smurfit. (Doc. 1, Complaint).

On motion for judgment on the pleadings, defendants Smurfit and the Pension Plan argue that Howington's ERISA claim "is barred by the June 21, 2010 Confirmation Order entered by the United States Bankruptcy Court for the District of Delaware, and due to dismissed because of the

---

[5] *See* Fed. R. Civ. P. 12(d) ("Result of Presenting Matters Outside the Pleadings. If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.").

[6] Title 29 U.S.C. § 1132(a), captioned "Persons empowered to bring a civil action", explains that "[a] civil action may be brought-- (1) by a participant or beneficiary--(A) for the relief provided for in subsection (c) of this section, or (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan; . . ."

6

February 17, 2010 Settlement Agreement". (Doc. 17, p. 1). Defendants argue that the Confirmation Order and Settlement Agreement "are pleadings to which this Court takes judicial notice". (Id.)[7]

The June 21, 2010 Confirmation Order

Defendants argue that Paragraphs 51 and 53, in the Confirmation Order effective June 30, 2010, and Sections 10.1.1, 10.1.2, 10.2.2 and 10.2.3 of the Chapter 11 Plan work together to discharge and release all claims and any other obligations or liabilities which arose before June 30, 2010, the effective date of the Confirmation Order and to permanently enjoin pursuit of any claims, obligations, suits, judgments, damages, debts, rights, remedies or causes of action against Smurfit. Based on this broad discharge and injunction, defendants argue that any claim based upon the September 1, 2009, denial of Howington's ERISA claim, is barred by the discharge in bankruptcy.

Although Paragraphs 51 and 53 of the Confirmation Order provide for discharge of debts and injunctive relief, there appear to be conflicting paragraphs in the Confirmation Order and the Chapter 11 Plan. Sections 10.1.1, 10.1.2, 10.2.2 and 10.2.3, are found in Article X of the Chapter 11 Plan, captioned "Injunctions, Releases and Discharge". (*In Re Smurfit-Stone Container Corporation, et al*, Bankruptcy Action No. 09-10235(BLS), United States Bankruptcy Court, District of Delaware, Confirmation Order, Doc. 8107-4, Exhibit A, Chapter 11 Plan, p. 113). Each section begins with the caveat that they apply "except" as otherwise provided in the Chapter 11 Plan or Confirmation Order. Paragraphs 51 and 53 of the Confirmation Order begin with the same exceptions.

And there may be an exception. In the Findings of Fact and Conclusions of Law section of the Confirmation Order wherein "Compliance with the Requirements of Section 1129[8] of the

---

[7] Defendants attached a copy of the Confirmation Order and Settlement Agreement to the amended answer and referred to these documents in the answer (Docs. 14, 14-1, 14-2).

[8] Beginning with section HH, the Order addresses compliance with the requirements of
(Continued)

Bankruptcy Code", are confirmed, Section JJJ therein addresses "Retiree Benefits", and states as follows:

> In accordance with section 1129(a)(13) of the Bankruptcy Code, Section 6.11 of the Plan provides that except and to the extent previously assumed by an order of the Bankruptcy Court, as of the Confirmation Date, but subject to the occurrence of the Effective Date, all Employee Benefit Plans, including the Employment and Retirement Benefit Agreements, of the Debtors, as amended or modified, including programs subject to section 1114 and 1129(a)(13) of the Bankruptcy Code, entered into before, on or after the Petition Date and not since terminated, shall be deemed to be, and shall be treated as though they are executory contracts that are assumed by the Debtors and assigned to the Reorganized Debtors, except for (i) executory contracts or plans specifically rejected pursuant to the Plan, and (ii) executory contracts or plans that have previously been rejected, are the subject of a motion to reject or have been specifically waived by the beneficiaries of any plans or contract; <u>provided</u>, <u>however</u>, that (x) the Debtors shall pay all "retiree benefits" (as defined in section 1114(a) of the Bankruptcy Code), and (y) the Debtors shall amend those certain Employment and Retirement Benefit Agreements attached as <u>Exhibit</u> 13 of the Plan (filed with the Plan Supplement) prior to (or upon) the assumption thereof by the Debtors (and assignment thereof to the Reorganized Debtors) to provide that the implementation of the restructuring in accordance with the Plan shall not alone constitute "Good Reason" or "Good Cause" (or provide any other similar basis) for any employee of the Debtors or the Reorganized Debtors to terminate his or her employment nor constitute a "Change in Control" that would result in any obligation of the Debtors or Reorganized Debtors to provide any payments or other benefits to any employee.

(Doc. 14-1, p. 37) (underlining in Exhibit).

Although referencing exceptions and provisions, this paragraph in the Confirmation Order provides that "all Employee Benefit Plans . . . shall be deemed to be, and shall be treated as though

---

Section 1129 of the Bankruptcy Code which explains that the "court shall confirm a plan only if all of the following requirements are met". 11 U.S.C. § 1129(a). Section 1129(a)(13) states as follows: "(13) The plan provides for the continuation after its effective date of payment of all retiree benefits, as that term is defined in section 1114 of this title, at the level established pursuant to subsection (e)(1)(B) or (g) of section 1114 of this title, at any time prior to confirmation of the plan, for the duration of the period the debtor has obligated itself to provide such benefits."

they are, executory contracts that are assumed by the Debtors and assigned to the Reorganized Debtors." (*Id*.)   Thus, the Employee Benefit Plans appear to have been assigned to the Reorganized Debtor.  Howington's claim for disability benefits which was on appeal at the time of the Confirmation Order,  may fall within an exception to the assumption and assignment, but nothing before the Court so indicates.

Moreover, section 6.11 of the confirmed Chapter 11 Plan, as referenced in Section JJJ of the Confirmation Order,  is captioned "Employee Compensation and Benefit Programs."  (*In Re Smurfit-Stone Container Corporation, et al*, Doc. 8107-4, Exhibit A, Chapter 11 Plan, p. 95).  Section 6.11.3, provides as follows:

> 6.11.3 On the Effective Date, Reorganized SSCC [Smurfit Stone Container Corporation] and any other Reorganized Debtor whose employees are covered by any of the U.S. Pension Plans shall assume and continue the U.S. Pension Plans, satisfy the minimum funding standards under the U.S. Pension Plans pursuant to 26 U.S.C. § 412 and 29 U.S.C. § 1082, and administer the U. S. Pension Plans in accordance with their terms and the provisions of ERISA; and nothing in the Plan shall be construed in any way as discharging, releasing or relieving the Debtors or the Debtors' successors, including the Reorganized Debtors, or any party, in any capacity, from liability imposed under any law or regulatory provision with respect to the U.S. Pension Plan.

(*Id.* , Doc. 8107-4, at p. 96) (bracketed text added).

The confirmed Chapter 11 Plan, at paragraph 1.1.244, p. 30, defines "U.S. Pension Plans" to include "the Smurfit-Stone Container Corporation Pension Plan for Hourly Employees". (*Id*., Doc. 8107-2, Exhibit A, Chapter 11 Plan, p. 30).  Howington was a member of this Pension Plan.  Since "nothing in the [Chapter 11 Plan] shall be construed in any way as discharging, releasing or relieving the Debtors or the Debtors' successors, including the Reorganized Debtors, or any party, in any capacity, from liability imposed under any law or regulatory provision with respect to the

9

U.S. Pension Plan", the Court cannot find as matter of law, at this time,[9] that Howington's claim has been discharged by the broad discharge and injunction provisions identified by defendants. Therefore, accepting the facts presented as true and viewing them in the light most favorable to Howington, defendants' motion for judgment on the pleadings based upon discharge in bankruptcy is DENIED.

### The February 17, 2010 Settlement Agreement

On August 29, 2009,[10] Howington filed a Proof of Claim in the bankruptcy action based upon his employment discrimination action and subsequently settled that action and resolved the claim. On February 17, 2010, Howington executed a Settlement Agreement which contained a waiver and release provision. (Doc. 14-2). Defendants argue that because Howington waived and released all claims, known or unknown, against Smurfit and the Pension Plan (as a related entity) "arising from or in any way related to the Pending Litigation or Proof of Claim", he also released his ERISA claim.

Howington argues that he did not intend to release his claim for disability benefits. He argues that the Settlement Agreement was made with Smurfit in an unrelated action and not with the Pension Plan. He also argues that Smurfit was aware of his claim for disability benefits and if Smurfit intended for the Agreement to release the disability claim, that release should have been specifically addressed in the Agreement.

The parties agreed to construe the Settlement Agreement in accordance with the Bankruptcy Code, and if applicable, "the internal laws of the State of Delaware" (Doc. 14-2, p. 4). The law of Delaware provides that "when parties agree to settle a lawsuit, a binding contract is deemed to have

---

[9] The confirmation of the Plan, in a word, is complicated. The issue has not been adequately briefed.

[10] The Proof of Claim is stamped "Filed/Received" on August 28, 2009. (doc. 18-6, p. 1).

been created. The agreement is then construed using principals of ordinary contract interpretation." *Snug Harbor Condominium Council v. Sullivan*, 2011 WL 567453, 3 (Del.Ch., Feb. 7, 2011). Applying ordinary contract interpretation, "the interpretation of a contract is a question of law" and where "the contractual language is 'clear and unambiguous,' the ordinary meaning of the language generally will establish the parties' intent." *MicroStrategy Inc. v. Acacia Research Corp.*, 2010 WL 5550455, 5 (Del.Ch. Dec. 30, 2010) (applying contract interpretation provisions on motion to dismiss in an action for breach of settlement agreement and declaratory relief) (footnotes omitted).

The Settlement Agreement does not foreclose Howington's claim for disability benefits because the "clear and unambiguous" contract language given its "ordinary meaning" shows that the parties intended to release only those claims "related to" the "Pending Litigation." The Settlement Agreement provided that Howington waived and released defendant Smurfit from claims "arising from or in any way related to the Pending Litigation or Proof of Claim." (Doc. 14-2, p. 3). The parties defined the "Pending Litigation" as the employment discrimination action filed in the Southern District of Alabama "together with any related litigation". (Doc. 14-2, p. 1). The Proof of Claim states on its face that it is based upon "employment discrimination". (Doc. 18-6 & 7, Exhibit E). The Settlement Agreement also states that it "constitutes the entire agreement of the Parties with respect to these matters (and solely with respect to these matters). . ." (Doc. 14-2, p. 4).

There is no mention of Howington's claim for disability benefits in either the definition of "Pending Litigation", the Proof of Claim, the complaint in the underlying civil action, or the Settlement Agreement. Logically, Howington's ERISA action is simply not related and does not arise from his employment discrimination action, i.e., the "Pending Litigation". Therefore, accepting the facts presented as true and viewing them in the light most favorable to Howington, defendants' motion for judgment on the pleadings based upon Howington's waiver and release by execution of the Settlement Agreement is DENIED.

Defendants' Reply

In the reply, defendants also argue that Howington's claim should be denied on the merits. Defendants argue that even if Howington is correct in that he became disabled before his employment ended, and hence, the Plan Administrator's decision was wrong, this Court should defer to and uphold the decision because it was reasonable and not arbitrary and capricious. Defendants argue that in exercising its discretion, the Plan Administrator could reasonably rely upon the onset of disability date as determined by the Social Security Administration and based upon Howington's allegation as to the onset date.

This argument may be meritorious. However, an argument raised for the first time in a reply will not be addressed since the non-movant is without an opportunity to respond to the newly raised argument. *See Kerns v. Sealy,* 2007 WL 2012867, 11 n.20 (S.D.Ala. Jul. 6, 2007) (citing *Fisher v. Ciba Specialty Chemicals Corp.,* 238 F.R.D. 273, 284 (S.D. Ala. 2006) ("As a procedural matter, this argument is not properly raised because plaintiffs submitted it for the first time in their reply brief."); *Martinez v. Weyerhaeuser Mortg. Co.,* 959 F.Supp. 1511, 1515 (S.D.Fla. 1996) ("the Court finds that the movant may not raise new arguments in a reply brief"); *United States v. Feinberg,* 89 F.3d 333, 341 (7th Cir.1996) ("The reply brief is not the appropriate vehicle for presenting new arguments or legal theories to the court.").

Conclusion

In accordance with the foregoing, defendants' motion for judgment on the pleadings is **DENIED**.

**DONE** and **ORDERED** this 7th day of December, 2011.

    s / Kristi K DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**