IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JAMES HOWINGTON, JR.,           ) | |
|                                 ) | |
|     Plaintiff,                  ) | |
|                                 ) | |
| vs.                             ) | CIVIL ACTION NO. 11-0136-KD-M |
|                                 ) | |
| SMURFIT-STONE CONTAINER         ) | |
| CORPORATION and SMURFIT-STONE   ) | |
| CONTAINER CORPORATION           ) | |
| PENSION PLAN FOR HOURLY         ) | |
| EMPLOYEES,                      ) | |
|                                 ) | |
|     Defendant.                  ) | |

## ORDER

This action is before the Court on the defendants Smurfit-Stone Container Enterprises, Inc.,[1] (Smurfit) and Smurfit-Stone Container Corporation Pension Plan for Hourly Employees' (the Pension Plan) motion for summary judgment and brief in support, response filed by plaintiff James Howington, Jr., and defendants' reply. (Docs. 27, 28, 29, 34, 36). Upon consideration and for the reasons set forth herein, the motion for summary judgment is **DENIED.**

I. Background

Howington filed this action pursuant to the Employee Retirement Income Security Act (ERISA) as codified at 29 U .S.C. § 1001, *et seq*, to recover disability benefits due under the terms of the Smurfit-Stone Container Corporation Pension Plan for Hourly Employees. Howington alleges that he became totally and permanently disabled while working for Smurfit but the Pension Plan refused to pay benefits on basis that he became disabled after leaving

---

[1] Defendants state that Smurfit is now merged with RockTenn CP, LLC, and that it retains all the rights and obligations of Smurfit.

1

employment on September 27, 2007.  Defendants answer that Howington's award of Social Security disability benefits show an onset of disability date of October 28, 2007 and based on that date, Howington became disabled after he left employment. Therefore, his application for benefits was not wrongfully denied.

I. Findings of Fact[2]

Howington was an hourly employee at Smurfit's paper mill in Brewton, Alabama and he participated in the Pension Plan for hourly employees. (Doc. 1).  Howington's last day of work for Smurfit was September 27, 2007. (Doc. 1).  On September 30, 2007, the paper mill was sold to Georgia Pacific Corporation but Howington's pension remained with the Smurfit Pension Plan.  (Doc. 1, Doc. 14, Answer, p. 8).

In January, 2008, Howington applied for Social Security disability. (Doc. 1).  On June 2, 2009, he was awarded Social Security Disability benefits. (Doc. 34-2).  The Administrative Law Judge (ALJ) found that Howington had "not engaged in substantial gainful activity since October 28, 2007, the alleged onset date[.]" (Doc. 34-2, p. 5) and that he "has been under a disability as defined in the Social Security Act since October 28, 2007, the alleged onset date of disability." (Doc. 34-2, p. 7).

After the award, Howington applied for long term disability through the Pension Plan. (Doc. 28-3, ¶ 5, Affidavit of Cheryl Curik, former Manager of Retirement Plans and Compliance for Smurfit).  On September 1, 2009, Howington's claim was denied on basis that the Social Security decision indicated he became disabled October 28, 2007, after he left

---

[2] On motion for summary judgment, the Court must construe the record and all evidence and factual inferences, in the light most favorable to the nonmoving party and resolve all reasonable doubts in regard to the facts in favor of the non-movant. *See Skop v. City of Atlanta,* 485 F.3d 1130, 1136 (11th Cir. 2007).

employment with Smurfit. (*Id*. ¶ 8; Doc. 1, p. 2, ¶ 13; Doc. 22, p. 13, Exhibit B to Howington's response to the motion for judgment on the pleadings). The unsigned letter explained that Howington may appeal the decision and that if he "decided[d] to appeal, please provide any documentation that you believe supports your claim." (Doc. 22, p. 13, Exhibit B).

On or near October 27, 2009, Howington wrote the Pension Plan explaining that he made a mistake as to the date he last worked for Smurfit when he applied for Social Security disability benefits. (doc. 37, p. 4, Exhibit A). Howington wrote that he enclosed with his appeal "the sheet that I had filled out for social security with the mistake" (*Id*.) He also asked for help with this matter and also asked the Pension Plan to contact him should the Committee need more information. (*Id*).

At some time after July 13, 2010, Howington was notified that the decision was affirmed on appeal by the Smurfit-Stone Administrative Committee. (Doc. 22, Exhibits C, p. 14, Letter from Smurfit Stone Pension Service Center, dated July 13, 2010). In this letter, Curik explained that the Administrative Committee reviewed Howington's claim, his Social Security disability award, his personnel file, and the applicable Pension Plan document. (*Id*).

In December 2010, Howington's counsel wrote the Service Center about the denial (Doc. 37, p. 7-8, Exhibit B, Letter to Curik dated December 9, 2010). Counsel offered to provide medical records in support of the onset date. Pension Plan counsel responded that the denial would be reconsidered if Howington provided "a revised Social Security determination stating that he was disabled on September 27, 2007." (Doc. 22, Exhibit E, p. 16).

On January 13, 2011, counsel for Howington responded that the time limit had passed to amend the SSA decision and provided the full ALJ decision to Pension Plan Counsel (doc. 37, p. 9-10). In March 2011, Pension Plan Counsel responded that benefits were not available because

3

"[a]ccording to the determination, Mr. Howington's disability began after he left [Smurfit's] employment." (Doc. 37, p. 11). Pension Plan Counsel also explained that a "condition of eligibility . . . is that a participant be disabled while in active employment." (*Id.*)

Howington states that the date of last substantial gainful activity in the Social Security decision is incorrect. (Docs. 1, 34, response to motion for summary judgment). Howington states that he returned to the paper mill to access his 401-K Plan in October 2007, and this confused him as to the date of last employment and led to his "mistakenly"[3] stating in his Social Security application that "he became disabled on October 28, 2007 rather than the correct date, which was September 27, 2007." (Doc. 34-1, p. 2, Howington Affidavit).

Section 5.16 of the Pension Plan defines disability as follows:

Disability Defined.  Except as otherwise provided in a Supplement, a Member who becomes disabled while in the active employment of the Company shall be deemed to be disabled for purposes of the Plan if through an unavoidable cause: (a) he has been disabled by illness or injury so as to be incapable of engaging in any occupation or employment for remuneration or profit; (b) such disability shall have been continued for a period of at least five consecutive months, and (c) the Member has received a federal Social Security Disability award or a premium waiver or death benefit only continuation coverage under the Company's life insurance carrier. For purposes of this Section 5.16, the phrase "active employment" means that on the date of onset of disability, the Member (i) was on the active payroll of the Employer; and (ii) was not on a leave of absence as defined under Article III.

(Doc. 28-3, p. 33, Pension Plan p. 23).

The Pension Plan provides for an Administrative Committee of at least three members to serve as the Plan Administrator, and sets forth, in part, the following:

---

[3] Howington admits to his mistake and for purposes of summary judgment, the Court will accept his admission as fact that he made a mistake. *See* note. 3.

>    Section 11.2 <u>Committee's Powers</u>.  The Committee shall have such powers as may be necessary to discharge its duties hereunder, including, but not limited to, the following powers, rights, discretion and duties:
>
>    11.2(a)  <u>Interpretation of Plan and Trust Fund</u>  The Committee shall have the power, right and duty to construe and interpret the Plan and Trust Fund provisions in its discretion and to determine all questions . . . including . . . eligibility for Plan benefits and the rights of Employees . . . to benefits under the Plan . . .
>
>    11.2(c)  <u>Benefit Determinations</u>. The Committee shall have the power, right and duty to make determinations as to the rights of Employees, Members, Beneficiaries and other persons to benefits under the Plan and to afford any Member or Beneficiary dissatisfied with such determination with rights pursuant to a claims procedure adopted by the Committee.

(doc. 28-3, p. 46).

>    As to the Claims Procedure, the Pension Plan sets forth in relevant part, as follows:
>
>    11.5(a) Each person eligible for a benefit under the Plan will make a claim for his or her benefit by submitting an appropriate form to the Committee.  Each such person will also furnish the Committee with such documents, evidence, data, or information in support of his or her claim as the Committee considers necessary or desirable.

(doc. 28-3, p. 48).   The Pension Plan also provides for a review if the claim is denied (*Id.*)

Upon review of a denial, the reviewer shall

>    take into consideration all comments, documents, records, and other information submitted by the claimant in support of the claim, without regard to whether such information was submitted or considered in the initial benefit determination.

(*Id.*, p. 49 at § 11.5(d)).

II. <u>Conclusions of law</u>

    A. <u>Summary judgment standard</u>

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  If a party asserts "that a fact cannot be or is genuinely disputed", the party must

5

> (A) cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A)(B).

The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Clark,* 929 F.2d at 608 quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986).

Once the moving party has satisfied its responsibility, the burden shifts to the nonmovant to show the existence of a genuine issue of material fact. *Id*. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determination of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-159, 90 S.Ct. 1598, 1608-1609 (1970). However, "[a] moving party is entitled to summary judgment if the nonmoving party has 'failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.'" *In re Walker*, 48 F. 3d 1161, 1163 (11th

Cir. 1995) quoting *Celotex Corp.*, 477 U.S. at 323, 106 S. Ct. at 2552.

Overall, the Court must "resolve all issues of material fact in favor of the [non-movant], and then determine the legal question of whether the [movant] is entitled to judgment as a matter of law under that version of the facts." *McDowell v. Brown*, 392 F.3d 1283, 1288 (11th Cir. 2004) citing *Durruthy v. Pastor*, 351 F.3d 1080, 1084 (11th Cir. 2003).

However, the mere existence of any factual dispute will not automatically necessitate denial of a motion for summary judgment; rather, only factual disputes that are material preclude entry of summary judgment. *Lofton v. Secretary of Dept. of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004). "An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. It is genuine if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 807 (11th Cir. 2010) (citation omitted). Also, "what is considered to be 'facts' at the summary judgment stage may not turn out to be the actual facts if the case goes to trial, but those are the facts at this stage of the proceeding for summary judgment purposes." *Cottrell v. Caldwell*, 85 F.3d 1480, 1486 (11th Cir. 1996).

B.  The ERISA standard of review

"ERISA does not set out standards under which district courts must review an administrator's decision to deny benefits." *Doyle v. Liberty Life Assur. Co. of Boston*, 542 F.3d 1352, 1355 (11th Cir. 2008) citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109, 109 S.Ct. 948, 953, 103 L.Ed.2d 80 (1989).  The Court of Appeals for the Eleventh Circuit developed a six-step review process which was modified in response to the decision in *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 S.Ct. 2343 (2008).  After *Glenn*, this circuit no longer requires district courts to apply a heightened standard of review to a conflicted

plan administrator's decision (the sixth step). *Doyle*, 542 F. 3d at 1360. [4]

Eliminating the heightened standard of review in the sixth step, the review process proceeds as follows:

> (1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, end inquiry and affirm the decision.
>
> (2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, then end the judicial inquiry and reverse the decision.
>
> (3) If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).
>
> (4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.
>
> (5) If there is no conflict, then end the inquiry and affirm the decision.
>
> (6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Blankenship v. Metropolitan Life Ins. Co.*, 644 F. 3d 1350, 1355 (11th Cir. 2011) cert. denied, 132 S. Ct. 849 (2011) (amending the sixth step); *see Doyle*, 542 F. 3d at 1356, (the sixth step was "(6) If there is a conflict of interest, then apply heightened arbitrary and capricious review to the decision to affirm or deny it.") (citations omitted); *see also Tippitt v. Reliance Standard Life Ins.*

---

[4] Now, "the existence of a conflict of interest should merely be a factor for the district court to take into account when determining whether an administrator's decision was arbitrary and capricious." *Doyle,* 542 F. 3d at 1360. Thus, while this court "must take into account an administrative conflict when determining whether an administrator's decision was arbitrary and capricious, the burden remains on the plaintiff to show the decision was arbitrary; it is not the defendant's burden to prove its decision was not tainted by self-interest." *Id*.

*Co.*, 457 F.3d 1227, 1231-32 (11th Cir. 2006). "A pertinent conflict of interest exists where the ERISA plan administrator both makes eligibility decisions and pays awarded benefits out of its own funds." *Id.*, 644 F.3d at 1355. Moreover, where the "plan administrator" has "discretion in reviewing claims under the Plan . . . all of the steps . . . are potentially at issue". *See Blankenship*, 644 F. 3d at 1356 n.7.

  C. <u>Analysis</u>

  <u>Motion to strike</u>

  In paragraphs four and five of their motion to strike, defendants move to strike certain portions of paragraphs three and four of Howington's affidavit. (Doc. 35). Defendants argue that Howington's statements as to what the Plan advised him or told him are inadmissible hearsay to which no exception applies. However, it appears that Rule 801(d) of the Federal Rules of Evidence may be applicable. The Rule identifies "[s]tatements that are not hearsay" and that

> [a] statement that meets the following conditions is not hearsay: (2) An Opposing Party's Statement. The statement is offered against an opposing party and: (D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed . . . [t]he statement must be considered but does not by itself establish . . . the existence or scope of the relationship under (D)[.]"

Fed. R. Evid. 801(d)(2)(D). Accordingly, for purposes of summary judgment, these statements may be admissible hearsay and the motion to strike is DENIED as to the alleged statements made to Howington by The Plan.

  Defendants also move to strike paragraphs one and two from Howington's affidavit. (doc. 35, p. 1-3.) The motion is DENIED as to Howington's explanation for the incorrect date. Howington's explanation may seem conclusory but it is based on his personal knowledge. As to the lack of a factual basis for his assertion of mistake, the evidence before the Court indicates that Howington's employment ended on September 27, 2007, and that the ALJ found that

Howington had not engaged in substantial gainful activity since October 28, 2007.  This supports his statement that he was confused as to his date last employed.  Howington explains his confusion by reference to his return to the paper mill to obtain funds from his 401(k) Plan.

Defendants also move to strike the portion of these paragraphs wherein Howington speculates as to how the ALJ reached his decision and speculates that the ALJ would have changed the date had Howington requested.  The motion also moves to strike as hearsay without exception, certain information Howington heard from his attorney.  In paragraph two, Howington states that "]i]t is my understanding from my attorney that had [there been a disability hearing], the [ALJ] would have allowed me to amend my onset date from October 28, 2007 to September 27, 2007." (doc. 34-1, p. 2).  The motion to strike is MOOT as to these portions of the affidavit because the Court did not rely upon these allegations in reaching its decision on summary judgment.

Motion for summary judgment

As a preliminary consideration, there does not appear to be a conflict of interest.  Howington argues that the Plan Administrator has a conflict of interest because benefits are paid by defendant Smurfit.  However, defendants explain that benefits are paid from a trust and not by defendant Smurfit or the Pension Plan.[5]

The parties agree that the Plan Administrator has discretion to interpret the Pension Plan (step two).  The Pension Plan grants that discretion to the Administrative Committee which

---

[5] The Pension Plan Document defines "Trust Fund" to "mean[] the fund established under the Trust Agreement by contributions made by the Employees, and from which retirement benefits may be paid." (doc. 28-3, p. 17, Pension Plan Document, p. 7).  The "Trust Agreement means the trust agreement made and entered into by the Company with the Trustee" (*Id.*)  The "Trustee means the trustee under the trust agreement which establishes the Trust Fund, or its successor or successors." (*Id.*)

serves as the Plan Administrator. ("The Committee shall have the power, right and duty to construe and interpret the Plan and Trust Fund provisions in its discretion and to determine all questions . . . including . . . eligibility for Plan benefits and the rights of Employees . . . to benefits under the Plan . . . ") (Doc. 28-3, p. 46, ¶11.2(a)).  Therefore, if the Court disagrees with the Plan Administrator's decision at step one, and proceeds to step three, then the Court must apply a deferential arbitrary and capricious standard and determine whether the decision was rational and made in good faith, but not whether it was right.

Step one - *de novo* review

Defendants argue that the evidence before the Plan Committee, *i.e*., the Social Security decision, established that Howington became disabled after he left employment with Smurfit. Defendants also argue that Howington knew he could present additional documents such as his medical records but declined to do so.

Howington admits that he gave an incorrect date of last employment when he completed the Social Security benefit application. Howington argues that the Plan Administrator's decision is wrong because of reliance upon this incorrect date.  Howington also argues that the Plan Administrator refused to review his medical records or allow him to submit additional evidence to show that he was disabled before he left employment but instead relied upon three pages of the Social Security disability decision which was based upon the incorrect date.

At the first step of the analysis, the Court applies "the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision)" *Blankenship*, 644 F. 3d at 1355.   "[W]hen the court makes its own determination of whether the administrator was "wrong" to deny benefits under the first step of the *Williams* analysis, the court applies the terms of the policy." *Ruple v. Hartford Life and*

11

*Acc. Ins. Co.*, 340 Fed.Appx. 604, 611 (11th Cir. 2009); citing 29 U.S.C. § 1104(a)(1)(D) and *Oliver v. Coca-Cola Co.*, 497 F.3d 1181, 1195 (11th Cir. 2007).

Thus, the Court begins with the plain language of § 5.16 of the Pension Plan which defines disability. The section requires that the employee was employed on the date of onset of disability. (Doc. 28-3, p. 33). The section also requires that the employee "received a federal Social Security Disability award or a premium waiver or death benefit only continuation coverage under the Company's life insurance carrier." (Doc. 28-3, p. 33).

The section does not require the Plan Committee or the Plan Administrator on appeal to adopt the date of onset from the Social Security award. They retained the discretion to determine an award of benefits under the Plan. ("The Committee shall have the power, right and duty to construe and interpret the Plan and Trust Fund provisions in its discretion and to determine all questions . . . including . . . eligibility for Plan benefits and the rights of Employees . . . to benefits under the Plan . . . ")[6] (Doc. 28-3, p. 46, ¶11.2(a)). Howington presented a "question" to the Plan Administrator on appeal when he informed the Plan that he had put the wrong date on his Social Security Application.

Pursuant to the regulations governing Social Security disability determinations, a person cannot be found disabled so long as they are engaged in substantial gainful activity. See 20 C.F.R. § 4-4.1520(b) ("If you are working and the work you are doing is substantial gainful activity, we will find that you are not disabled regardless of your medical condition or your age,

---

[6] This seems to contradict Pension Plan Counsel's statement to Howington in the letter of March 2, 2011 ". . . the Plan administrator does not make its own disability determinations. Instead, the administrator relies on external disability determination by either the Social Security Administration or the carrier under SSCC's life insurance program. In the absence of a determination of the type required by the Plan, Mr. Howington's request for a disability pension is denied." (Doc. 37, p. 11).

education, and work experience.").[7] When Howington gave the SSA the wrong date last employed, that date became the date of onset of disability. It appears that but for his mistake, the Pension Plan would have awarded disability benefits.

Additionally, "29 U.S.C. § 1104(a)(1), mandates that a fiduciary shall 'discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and ... (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use ....'" *Capone v. Aetna Life Ins. Co.*, 592 F.3d 1189, 1199-1200 (11th Cir. 2010) (finding that Aetna "had the responsibility to fully investigate Capone's claims before denying benefits. Aetna failed to adequately address the issues raised in Capone's appeal and the denial of benefits without a proper investigation was de novo wrong.").

Upon consideration of the Plan language, and viewing the facts in the light most favorable to the non-movant Howington, the Court finds that there remains an issue of fact as to whether the decision was based on mistaken information as to the date of last employment and therefore, was incorrect.

The Court now proceeds to step three to determine whether there are reasonable grounds to support the decision.  To do so, the Court must apply the deferential arbitrary and capricious standard.  Defendants argue that the Plan Administrator acted reasonably in relying upon the SSA's determination of the onset of disability date.  Defendants argue that Howington should have submitted any additional evidence including his medical records when he appealed the Plan Administrator's decision and that on appeal, the Plan Administrator did not have an obligation to

---

[7] This regulation is cited in the ALJ decision. (doc. 34-2, p. 5) ("The claimant has not engaged in substantial gainful activity since October 28, 2007, the alleged onset date (20 CFR 404.1520(b) and 404.1571, et seq.)").

obtain additional information for Howington.

Howington states that he "wasn't allowed to submit medical records in my initial application for disability with the Plan." (doc. 34-1, p. 3).  He also argues that the Pension Plan acted arbitrarily and capriciously, committed a procedural irregularity, and did not provide him a full and fair review because the Pension Plan accepted the onset date and did not investigate his claim or request his medical records and refused to allow him to submit the medical records or additional evidence in support of his claim.

The Court finds that it would be arbitrary and capricious to refuse to consider the underlying medical records to support the disability onset date.  It is Howington's burden to prove the Pension Plan acted arbitrarily and capriciously.  In this case, meeting that burden turns on an issue of credibility which precludes summary judgment.

III.  Conclusion

In accordance with the foregoing, defendants' motion for summary judgment is **DENIED**.

Defendants incorporate by reference their earlier motion for judgment on the pleadings. Thus, to the extent that defendants' motion for summary judgment is based on the motion for judgment on the pleadings, the motion for summary judgment is **DENIED** for the reasons set forth in the order denying the motion for judgment on the pleading (Doc.  26).

**DONE** and **ORDERED** this 13th day of February, 2012.


   s / Kristi K DuBose  
**KRISTI K. DuBOSE**  
**UNITED STATES DISTRICT JUDGE**