IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **JAMES HOWINGTON, JR.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) CIVIL ACTION NO. 11-0136-KD-M |
| | ) |
| **SMURFIT-STONE CONTAINER** | ) |
| **CORPORATION, et al,** | ) |
| | ) |
| **Defendants.** | ) |

## ORDER

This action came before the Court for a non-jury trial on April 3, 2012. Upon consideration of the documentary and testimonial evidence presented at trial and all other pertinent portions of the record, the Court makes the following findings of fact and conclusions of law:

**I.     Procedural Background**

Howington filed this action against Smurfit-Stone Container Corporation (Smurfit-Stone) and Smurfit-Stone Container Corporation Pension Plan for Hourly Employees (the Pension Plan), pursuant to the Employee Retirement Income Security Act (ERISA) as codified at 29 U.S.C. § 1001, *et seq*, to recover disability benefits due under the terms of the Pension Plan. Howington alleges that he became totally and permanently disabled while working for Smurfit-Stone but the Pension Plan refused to pay benefits on basis that he became disabled after leaving employment on September 27, 2007. Defendants answered that Howington's award of Social Security disability benefits established an onset of disability of October 28, 2007 and based on that date, the Plan Administrator concluded that Howington became disabled after he left employment with Smurfit-Stone on September 27, 2007.

Defendants filed a motion for judgment as a matter of law on basis that Howington's claim had been discharged in the Smurfit-Stone Container Corporation, Inc. bankruptcy proceedings or

released pursuant to the settlement agreement and release in *Howington v. Smurfit-Stone Container Corporation, Inc.*, Civil Action No. 08-00252-CG-B (S.D. Ala. 2008). The motion was denied. (Doc. 26). Defendants filed a motion for summary judgment on the merits and the motion was denied. (Doc. 41). The non-jury trial was held on April 3, 2012.

## II.     Findings of Fact[1]

Howington was an hourly employee at Smurfit-Stone's paper mill in Brewton, Alabama and he participated in the Pension Plan for hourly employees. (Doc. 1). The Smurfit-Stone paper mill was sold to Georgia Pacific Corporation and effective midnight on September 28, 2007, it became the property of Georgia Pacific Corporation. Howington was scheduled to work from 10:00 p.m. until midnight on September 28, 2007. However, he left work on September 27, 2007 and did not return. Howington left work because of pain in his feet and told his supervisor that was why he was leaving. His personnel records do not contain any documentation of that statement. Instead, his personnel records indicate that he was terminated on September 27, 2007. At the time of sale of the paper mill, Smurfit-Stone employees fell into three groups: those who chose to take early retirement, those who applied with Georgia Pacific and were hired, and those who applied but were not offered a job. Howington fell into the latter group.

After he left work, Howington accessed the funds in his 401(k) and also contacted the Social Security Administration in regard to applying for disability benefits but was told he had to wait three months. In January 2008, he applied for disability benefits and on June 2, 2009, benefits were awarded based upon his record and without a hearing. (Howington Exhibit 1). In the application, Howington wrote that his date last employed was October 27, 2007 and his onset of disability was October 28, 2007. Howington testified that he was on pain medication at the time of the application

---

[1] Unless indicated otherwise, the findings of fact are taken from the trial testimony.

2

and made an error when gave the SSA the incorrect date of last employment with Smurfit-Stone. The Administrative Law Judge (ALJ) then found Howington had not "engaged in substantial gainful activity since October 28, 2007, the alleged onset date" and that he "has been under a disability as defined in the Social Security Act since October 28, 2007, the alleged onset date of disability." (Exhibit 1).

After the award, Howington applied for long-term disability benefits with the Pension Plan through the Pension Plan Service Center. He spoke with at least two female employees at the Service Center but could not recall their names. Howington did not fill out an application with the Service Center and instead was told that he needed a favorable decision from the SSA. In response, Howington selected and sent the Service Center three pages from the SSA decision. Howington provided the first and sixth page of the ALJ's decision and the first page of the SSA's "Notice of Decision-Fully Favorable". (Defendants' Exhibit 1).[2] The first page indicates that Howington claimed "disability since October 28, 2007" and the sixth page shows the ALJ's decision that Howington's date of onset of disability was October 28, 2007. (*Id.*)

On September 1, 2009, Howington's claim was denied on basis that the Social Security decision indicated an onset of disability of October 28, 2007, after he was terminated from Smurfit-Stone on September 27, 2007. (Howington's Exhibit 2). The unsigned letter explained that Howington had the "right to request a review of the denial of your benefits by the Administrative Committee", the "right to review relevant documents and to submit issues and comments in writing", and that if he "decided[d] to appeal" to "please provide any documentation that you believe supports your claim." (*Id.*). Howington was aware of these requirements.

---

[2] Although the parties did not provide the Court with a copy of the Pension Plan's administrative record as to Howington, defense counsel confirmed at trial that these were the three pages received by the Service Center with Howington's initial application for benefits.

After receiving the denial, Howington discovered that he had incorrectly written the date he last worked on his SSA application. He called the Service Center and asked what he should do to appeal. He was told to type an appeal letter and send documents to support his claim. He did not ask whether he should send medical records nor was he asked to send medical records.

On or near October 27, 2009, Howington sent an appeal letter to the Smurfit-Stone Administrative Committee explaining that he "made a mistake on last date worked" for Smurfit-Stone when he applied for Social Security disability benefits. (Howington's Exhibit 3). Howington explained that "I had said that my last work date was in October, 2007. The correct date should have been on September 2007. So I was an employee of Smurfit-Stone when I became Disabled." (*Id.*) He explained that the "social security Judge agreed that I was disabled back to the date that I entered on the questionnaire sheet, the wrong date Oct. and should have been Sept." (*Id.*) Howington enclosed with this letter "the sheet [he] had filled out for Social Security with the mistake" and his statement to Social Security that his medications made him feel drunk. (*Id.*) He wrote that he included an "investigative letter from Smurfit-Stone" which stated he was terminated on September 27, 2007 and "a statement from T. Rowe Price that states that Smurfit-Stone gave a separation date of October 1, 2007" to support his claim that "it is a common mistake for humans to put the wrong date on some forms". (*Id.*)

Howington called the Service Center and was told to provide the complete SSA decision. He wrote the Service Center on April 5, 2010, confirming the call and providing a copy of the notice of decision from the SSA. (Howington's Exhibit 4). He reiterated that he made a mistake when answering the SSA questionnaire, perhaps due to medication or "just an honest mistake", and points out again that "Smurfit-Stone made the same mistake" when it provided an incorrect termination date to T. Rowe Price. (*Id.*)

At some time after July 13, 2010, Howington was notified by letter from Cheryl Curik,

Manager of Compliance and 401(k) for Smurfit-Stone, that the decision was affirmed on appeal by the Smurfit-Stone Administrative Committee. (Howington's Exhibit 5, Letter from Smurfit- Stone Pension Service Center, dated July 13, 2010). In the letter, Curik explained that the Administrative Committee reviewed Howington's claim, his Social Security disability award, his personnel file, and the applicable Pension Plan document. (*Id*) Also, at some time after the denial on appeal, an employee at the Service Center told Howington to try to get his SSA decision changed but it was too late since more than sixty days had passed.[3]

John Higdon was employed by Smurfit-Stone Pension Center as the Pension Manager at the time Howington applied for benefits. His duties were to review claims for hourly employees such as Howington and to apply and follow the Pension Plan provisions. He reviewed and processed Howington's initial claim but not his appeal. Higdon testified that pursuant to the Pension Plan's interpretation of §5.16 of the Pension Plan, the claims reviewers rely upon the SSA's decision as to both disability and date of onset of disability. Therefore, they uniformly deny any claim based upon a SSA decision finding a date of onset of disability after active employment with Smurfit-Stone. He denied Howington's claim based on this interpretation of § 5.16. For Howington's application, the Pension Plan does not require consideration of objective medical evidence and providing medical evidence such as medical records would not matter because there is no one to perform a medical

---

[3] In December 2010, Howington's counsel wrote the Service Center and offered to provide medical records in support of the onset date. (Plaintiff's Exhibit 6, Letter to Curik dated December 9, 2010). Pension Plan counsel responded that the Pension Plan does not make independent determinations of disability but relies upon decision of the SSA or the carrier under Smurfit-Stone's life insurance program. Counsel stated that the denial would be reconsidered if Howington provided "a revised Social Security determination stating that he was disabled on September 27, 2007." (Plaintiff's Exhibit 7). On January 13, 2011, Howington's counsel responded that the time limit had passed for any amendment to the SSA decision and offered to provide additional medical evidence from Howington's physicians. (Plaintiff's Exhibit 8). In March 2011, Pension Plan Counsel responded that benefits were not available because "[a]ccording to the [SS] determination, Mr. Howington's disability began after he left [Smurfit's] employment" and that a "condition of eligibility . . . is that a participant be disabled while in active employment." (Plaintiff's Exhibit 9).

evaluation. Higdon acknowledged that Howington's personnel records showed his date last employed as September 27, 2007, but that Howington's remedy would be to correct the mistake with the SSA and obtain an amended decision.

Cheryl Curik reviewed Howington's claim on appeal. She testified that the Pension Plan interprets § 5.16 to mean that the claims reviewers should rely upon the SSA decision to establish disability and the onset of disability date and that even though the Pension Plan language in § 5.16 does not specifically require reliance on the SSA decision to establish the date of onset, that has been the historical application of the provision. Curik explained that this interpretation applies on appeal, such that Howington cannot correct his mistake through the Pension Plan's appeal process, but that other mistakes may be addressed and corrected on appeal such as a deficiency in the number of years in service. Curik confirmed that the Smurfit-Stone records indicate that Howington's date last employed was September 27, 2007.

Curik further testified that Howington did not apply for short-term disability through Smurfit-Stone's disability insurance carrier as was usually the case with employees who become disabled while employed. Had he done so, he would have been kept on the payroll.[4] Then, if Howington applied for Social Security disability benefits while receiving short-term disability and the SSA found Howington had an onset of disability during the time frame he received short-term disability, he would have been considered actively employed as defined in § 5.16, and likely awarded his long-term disability.

Curik stated that the claims reviewers looked to the reason for termination in the personnel record and looked for no gap in time between employment with Smurfit-Stone and the date of onset of disability. Howington's personnel records showed a date last employed of September 27, 2007

---

[4] Curik did not explain how Howington would have been kept on the payroll after September 27, 2007, when Smurfit-Stone no longer owned the plant as of September 28, 2007.

6

but they do not show that he was on short-term disability or that he had left work because of a disabling condition.  Curik contends she could not consider Howington's explanation for the mistaken onset date or his contention that he became disabled while employed because to do so would deviate from Pension Plan procedure.  Curik admitted she had no reason to disbelieve Howington and agreed that there was no method under the Pension Plan for correcting his mistake.

Under the terms of the Pension Plan, benefits are paid from a Trust Fund defined as "the fund established under the Trust Agreement by contributions made by the Employers, and from which retirement benefits may be paid." (Defendants' Exhibit 3, Smurfit-Stone Container Corporation Pension Plan for Hourly Employees, p. 7).  The Trust Agreement is defined as "the trust agreement made and entered into by the Company with the Trustee." (*Id*.).

The Pension Plan defines disability in § 5.16 which sets forth as follows:

> Disability Defined.  Except as otherwise provided in a Supplement, a Member who becomes disabled while in the active employment of the Company shall be deemed to be disabled for purposes of the Plan if through an unavoidable cause: (a) he has been disabled by illness or injury so as to be incapable of engaging in any occupation or employment for remuneration or profit; (b) such disability shall have been continued for a period of at least five consecutive months, and (c) the Member has received a federal Social Security Disability award or a premium waiver or death benefit only continuation coverage under the Company's life insurance carrier. For purposes of this Section 5.16, the phrase "active employment" means that on the date of onset of disability, the Member (i) was on the active payroll of the Employer; and (ii) was not on a leave of absence as defined under Article III.

(Defendants' Exhibit 3, p. 23).

The Pension Plan also provides for an Administrative Committee of at least three members appointed by the Board of Directors of Smurfit-Stone Container Enterprises, Inc., to serve as the Plan Administrator "and in that capacity, it will have the duties provided for the Plan Administrator in ERISA".  (Defendants' Exhibit 3, pp. 3-4, 36).  The Pension Plan sets forth, in part, as follows:

> Section 11.2 Committee's Powers.  The Committee shall have such powers as may be necessary to discharge its duties hereunder, including, but not limited to, the following powers, rights, discretion and duties:

7

> 11.2(a)  <u>Interpretation of Plan and Trust Fund</u>  The Committee shall have the power, right and duty to construe and interpret the Plan and Trust Fund provisions in its discretion and to determine all questions . . . including . . . eligibility for Plan benefits and the rights of Employees . . . to benefits under the Plan . . .
>
> 11.2(b) <u>Plan Procedures</u>
>
> The Committee shall have the power, right and duty to adopt procedures, rules, regulations and forms to be followed by Employees, Members, Beneficiaries and other persons or to be otherwise utilized in the efficient administration of the Plan and as are consistent with the Trust Fund.
>
> 11.2(c)   <u>Benefit Determinations</u>. The Committee shall have the power, right and duty to make determinations as to the rights of Employees, Members, Beneficiaries and other persons to benefits under the Plan and to afford any Member or Beneficiary dissatisfied with such determination with rights pursuant to a claims procedure adopted by the Committee.

(*Id*., p. 36).

As to the Claims Procedure, the Pension Plan sets forth in relevant part, as follows:

> 11.5(a) Each person eligible for a benefit under the Plan will make a claim for his or her benefit by submitting an appropriate form to the Committee.  Each such person will also furnish the Committee with such documents, evidence, data, or information in support of his or her claim as the Committee considers necessary or desirable.

(*Id*., p. 38).  The Pension Plan also provides for review if the claim is denied (*Id*., p. 38-39) Upon review of a denial,

> the reviewer shall take into consideration all comments, documents, records, and other information submitted by the claimant in support of the claim, without regard to whether such information was submitted or considered in the initial benefit determination.

(*Id*., p. 39 at § 11.5(d)).

### III. Conclusions of Law

### A. The ERISA standard of review

As an ERISA benefit plan participant, Howington may bring a civil action to recover, enforce or clarify his rights to benefits under the terms of the Pension Plan. 28 U.S.C. §

8

1132(a)(1)(B).  In that regard, "ERISA does not set out standards under which district courts must review an administrator's decision to deny benefits." *Doyle v. Liberty Life Assur. Co. of Boston*, 542 F.3d 1352, 1355 (11th Cir. 2008) citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109, 109 S.Ct. 948, 953 (1989).   The Court of Appeals for the Eleventh Circuit developed a six-step review process which has been modified in response to the decision in *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 S.Ct. 2343 (2008).  After *Glenn*, this circuit no longer requires the district courts to apply a heightened standard of review to a conflicted plan administrator's decision (the sixth step). *Doyle*, 542 F. 3d at 1360. [5]

Eliminating the heightened standard of review in the sixth step, the review process proceeds as follows:

> (1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, end inquiry and affirm the decision.
>
> (2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, then end the judicial inquiry and reverse the decision.
>
> (3) If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).
>
> (4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

---

[5] Formerly, the sixth step required that the Court determine whether there was a conflict of interest, and if so, the Court would apply a heightened arbitrary and capricious review to decide whether to deny or affirm. *Doyle*, 542 F. 3d at 1356. Now, "the existence of a conflict of interest should merely be a factor for the district court to take into account when determining whether an administrator's decision was arbitrary and capricious." *Doyle,* 542 F. 3d at 1360.  Thus, while this court "must take into account an administrative conflict when determining whether an administrator's decision was arbitrary and capricious, the burden remains on the plaintiff to show the decision was arbitrary; it is not the defendant's burden to prove its decision was not tainted by self-interest." *Id*.

(5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Blankenship v. Metropolitan Life Ins. Co.*, 644 F. 3d 1350, 1355 (11th Cir. 2011) cert. denied, 132 S. Ct. 849 (2011) (amending the sixth step).

If there is a reasonable basis for the Plan Administrator's benefits decision, based upon the facts known at the time, it must be upheld as not an abuse of discretion or arbitrary or capricious, even where the evidence may support a different decision. *Blankenship*, 644 F. 3d at 1354 citing *Jett v. Blue Cross & Blue Shield of Ala.*, 890 F.2d 1137, 1139-1140 (11th Cir.1989)  "[W]here the administrator exercises discretion, deferential (i.e., arbitrary and capricious) review is appropriate according to trust principles, which guide review of decisions affecting ERISA-governed plans." *Doyle*, 542 F. 3d at 1356 (citation omitted).  To determine whether the Plan Administrator's decision was arbitrary and capricious, the Court begins with the language of the Pension Plan. *Oliver v. Coca Cola, Co.*, 497 F.3d 1181, 1195 (11th Cir. 2007).

Pursuant to ERISA, the Plan Administrator's fiduciary duties are defined as the "prudent man standard of care".  29 U.S.C. § 1104(a)(1)(A).  The statute explains, in relevant part, that the "fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and-- (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan[.]" 29 U.S.C. § 1104(a)(1)(A).  ERISA also states that the fiduciary shall act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims" and act "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and

subchapter III of this chapter." 29 U.S.C. § 1104(a)(1)(B) & (D).

**B. Analysis**

In this action, the Plan Administrator has discretion to construe and interpret the terms of the Pension Plan and to determine all questions as to benefits. Also, because benefits are paid from the Trust Fund, the Plan Administrator does not have a conflict of interest. Therefore, this Court's review concludes at the fourth steps of the analysis. *See Eady v. American Cast Iron Pipe Co.*, 203 Fed. Appx. 326, 326-329 (11th Cir. 2006) (per curiam) (beginning the analysis at the third step and reviewing "the plan administrator's decision denying disability benefits to determine if it was arbitrary or capricious.").

In the order on summary judgment, the Court found that there was an "issue of fact as to whether the decision was based on mistaken information as to the date of last employment and therefore, was incorrect." (Doc. 41). Giving credibility to Howington's testimony that he wrote the wrong date of last employment and to Curik's testimony as to the date that Howington was last employed, the Plan Administrator's decision to deny Howington's benefits was based on mistaken information and therefore was incorrect. Howington contends that the Pension Plan acted arbitrarily and capriciously by not allowing an opportunity or a method to correct his mistake through the claims procedure process instead of requiring him to obtain an amendment of his SSA decision which was a legal impossibility.

There is no question that Howington made a mistake when he wrote down his alleged onset date and but for the mistake, he would have been awarded disability benefits under the Pension Plan. The question is whether the Plan Administrator's refusal to look beyond the SSA award to determine an onset date is arbitrary and capricious.[6] Howington contends that the Plan

---

[6] In the order on summary judgment, the Court indicated that based on the facts before it at that time, it would be arbitrary and capricious for the Pension Plan to refuse to allow Howington to
(Continued)

11

Administrator acted arbitrarily and capriciously by not allowing an opportunity or a method to correct his mistake through the claims procedure process instead of requiring him to obtain an amendment of his SSA decision which was a legal impossibility.  In response, Curik and Higdon testified that the Plan Administrator interprets §5.16 to mean that the date of onset established in the Social Security decision must be accepted as fact, without question, and then used to decide whether the applicant became disabled while actively employed with Smurfit-Stone.  Curik and Higdon testified that this procedure is uniformly applied to all applicants.

     While that may be a reasonable interpretation of the plain language of the Pension Plan, the Plan Administrator still owes a fiduciary duty to Howington.  Thus, "[a]lthough [Howington] is precluded from bringing a breach of fiduciary duty claim in conjunction with a wrongful denial of benefits claim," the Plan Administrator's "responsibilities as a fiduciary illustrates the proper standard of investigation." *Capone v. Aetna Life Ins. Co.*, 592 F.3d 1189, 1199 (11th Cir. 2010) (internal citation omitted).  ERISA requires that a fiduciary shall "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and ... (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use ...." 29 U.S.C. § 1104(a)(1).  Therefore, to act solely in the interest of Howington, the Plan Administrator was responsible for a full investigation of Howington's claims before denying benefits. *Capone*, 592 F. 3d at 1199-1200.  Instead, the investigation initially and on appeal was limited to a review of the SSA decision and personnel

---

submit medical records in support of his claim as to the date of onset. (Doc. 41).  In that regard, Curik testified that medical records would not have been reviewed even if Howington had sent them because the Plan Administrator relies solely on the SSA's determination of onset of disability and no one was employed to review the medical records and make a different determination.

12

records, but without recourse for correcting clerical mistakes.[7]  Therefore, the Court finds that the Plan Administrator's decision was without a reasonable basis and therefore arbitrary and capricious.

## IV.  Conclusion

Upon consideration of the foregoing, the decision is reversed and remanded to the Plan Administrator for further consideration and investigation as to Howington's onset of disability.

Pursuant to Rule 58 of the Federal Rules of Civil Procedure, judgment shall be entered by separate document.

**DONE** this the 12th day of April, 2012.

       s/ Kristi K. DuBose
KRISTI K. DuBOSE
UNITED STATES DISTRICT JUDGE

---

[7]  It is obvious from the SSA decision that the onset date was determined based on Howington's stated last day of employment.

13