IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **JAMES HOWINGTON, JR.,** ) | |
| ) | |
|     **Plaintiff,** ) | |
| ) | |
| vs. ) | CIVIL ACTION NO. 11-0136-KD-M |
| ) | |
| **SMURFIT-STONE CONTAINER** ) | |
| **CORPORATION and SMURFIT-STONE** ) | |
| **CONTAINER CORPORATION** ) | |
| **PENSION PLAN FOR HOURLY** ) | |
| **EMPLOYEES,** ) | |
| ) | |
|     **Defendants.** ) | |

## ORDER

This action is before the court on the plaintiff James Howington, Jr.'s motion for summary judgment, memorandum in support, and suggested determinations of undisputed fact and conclusions of law; defendants Smurfit-Stone Container Enterprises, Inc.[1] and Smurfit-Stone Container Corporation Pension Plan for Hourly Employees' (Smurfit and the Pension Plan) response in opposition; (docs. 77-79, 84) and Smurfit's motion for summary judgment, brief in support, and suggested findings of undisputed facts and conclusions of law; Howington's response; and Smurfit's reply (docs. 81-83, 89, 90, 91).[2][3]

Upon consideration and for the reasons set forth herein, Howington's motion for

---

[1] Defendants state that Smurfit is now merged with RockTenn CP, LLC, and that it retains all the rights and obligations of Smurfit.

[2] Howington's motion to strike Smurfit's motion for summary judgment (doc. 87) is DENIED.

[3] The court has determined that oral argument is not necessary to resolve the pending motions. Therefore, Smurfit's motion for oral argument (doc. 85) is DENIED.

summary judgment is **DENIED** and Smurfit's and the Pension Plan's motion for summary judgment is **GRANTED.**

I. Findings of Fact[4]

Howington was an hourly employee at Smurfit's paper mill in Brewton, Alabama and he participated in the Pension Plan for hourly employees. (Doc. 1)  Howington's last day of work for Smurfit was September 27, 2007. (Doc. 1)  Howington left work with Smurfit early on September 27, 2007 and claims this was because of his disability. (Doc. 1, Doc. 78, ¶ 10) Smurfit terminated all employees as of September 27, 2007.  (Doc. 83, ¶ 2)  On September 28, 2007, the paper mill was sold to Georgia Pacific Corporation. (Doc. 83, ¶ 2)  Georgia Pacific hired some of Smurfit's former employees. (*Id*.) Although Howington had applied to work with Georgia Pacific, he was not hired. (*Id*.)

 In January 2008, Howington applied for disability benefits with the Social Security Administration. (Doc.1)  He was awarded benefits on June 2, 2009. (Doc. 34-2)  The Administrative Law Judge (ALJ) found that Howington had "not engaged in substantial gainful activity since October 28, 2007, the alleged onset date[.]" (Doc. 34-2, p. 5)  The ALJ also determined that Howington "has been under a disability as defined in the Social Security Act since October 28, 2007, the alleged onset date of disability." (Doc. 34-2, p. 7)  Howington did not file an appeal of this decision. (Doc. 1, Doc. 72)

After the award, Howington applied for early disability retirement through the Pension Plan on basis that he became disabled while working for Smurfit. (Doc. 83, Exhibit A, Affidavit

---

[4] On motion for summary judgment, the court must construe the record and all evidence and factual inferences, in the light most favorable to the nonmoving party and resolve all reasonable doubts in regard to the facts in favor of the non-movant. *See Skop v. City of Atlanta,* 485 F.3d 1130, 1136 (11th Cir. 2007).

of Cheryl Curik, former Manager of Retirement Plans and Compliance for Smurfit; Doc. 83, Exhibit D, Affidavit of James Howington, Jr.).  Howington did not apply for short-term disability, which typically would be the first step a disabled Smurfit employee would take in order to obtain up to 29 weeks of short term disability benefits, before applying for early disability retirement and serving a waiting period. (Doc. 83, ¶ 7)

On September 1, 2009, Howington's claim was denied in reliance on the Social Security decision that he became disabled October 28, 2007, after he left employment with Smurfit. (Doc. 1, p. 2, ¶ 13; Doc. 78, ¶ 8)  The unsigned letter from the Pension Plan explained that the letter from the Social Security Administration stated that Howington was "deemed disabled in October 2007" and that as of that date he was not an "active employee" with Smurfit.  The letter further explained "We are bound by the terms and the conditions of the Plan, and must administer the Plan in accordance with those terms and conditions." (Doc. 22, p. 13)  As to the appeal process,

> Smurfit . . . offers an appeal process in accordance with [ERISA] to ensure that benefits have been properly administered according to Pension Plan provisions. You have the right to request a review of the denial of your benefits by the Administrative Committee.  You have the right to review relevant documents and to submit issues and comments in writing.  . . If you decide to appeal, please provide any documentation that you believe supports your claim.

(Doc. 22, p. 13, Exhibit B)

On or near October 27, 2009, Howington wrote the Pension Plan explaining that he mistakenly wrote the wrong date that he last worked for Smurfit on the application for Social Security Disability Benefits. (Doc. 78, ¶ 9; Doc. 37, p. 4, Exhibit A)  Howington enclosed with his appeal "the sheet that I had filled out for social security with the mistake[.]" (Doc. 37, p. 4, Exhibit A)  He asked for help with this matter and asked the Pension Plan to contact him should the Committee need more information. (*Id*).

At some time after July 13, 2010, Howington was notified that the Smurfit-Stone

3

Administrative Committee affirmed the decision on appeal. (Doc. 22, Exhibits C, p. 14, Letter from Smurfit Stone Pension Service Center, dated July 13, 2010).  In this letter, Cheryl Curik explained that the Administrative Committee reviewed Howington's claim, his Social Security disability award, his personnel file, and the applicable Pension Plan document. (*Id*).

In December 2010, Howington's counsel wrote the Pension Plan Service Center about the denial (Doc. 37, p. 7-8, Exhibit B, Letter to Curik dated December 9, 2010).  Counsel offered to provide medical records in support of the onset date.  Pension Plan counsel responded that the denial would be reconsidered if Howington provided "a revised Social Security determination stating that he was disabled on September 27, 2007." (Doc. 22, Exhibit E, p. 16).

On January 13, 2011, Howington's counsel responded that the time limit had passed to amend the Social Security Administration decision and provided the full ALJ decision to Pension Plan Counsel (doc. 37, p. 9-10).  In March 2011, Pension Plan Counsel responded that benefits were not available because "[a]ccording to the determination, Mr. Howington's disability began after he left [Smurfit's] employment" and that a "condition of eligibility . . . is that a participant be disabled while in active employment." (Doc. 37, p. 11)  Howington did not obtain a revised decision from the SSA.

Howington filed his complaint on March 17, 2011. (Doc. 1)  Smurfit answered and moved for judgment on the pleadings and for summary judgment. (Docs. 4, 5, 14, 17, 27)  The motions were denied. (Docs. 26, 41)  The non-jury trial was held on April 3, 2012, and after consideration of the evidence, the court entered an order whereby the case was remanded to Smurfit for further consideration and investigation as to Howington's onset of disability. (Doc. 59)  The court also held that Smurfit's decision to deny Howington an opportunity or method to correct his mistake through the claims procedure resulted in a denial decision that was without a

reasonable basis and therefore arbitrary and capricious. (Doc. 59)

On remand, Howington provided Smurfit with letters and medical records from his treating physicians Dr. Robert A. DeFrancisco, Ph.D[5] and Jonathan Southworth, D.O. (Doc. 78, p. 14, 15; Doc. 72, Exhibit A). He also submitted medical treatment records from Dr. Walid W. Friej, a neuro-psychiatrist,[6] and Dr. Peter M. Szymoniak,[7] an orthopedic physician. (Doc. 72, Exhibit A)

In February 2013, Karen Poole, the Director of Benefits at RockTenn, the successor to Smurfit, sent Howington a letter explaining that the additional information and medical history forms had been received. Poole wrote Howington as follows:

> As stated in previous communications, the Plan requires that you submit a Social Security Disability Award that states that you were found to be disabled while in the active employment of Smurfit-Stone. In the absence of such documentation, you are not eligible for a disability pension under the [Pension Plan].
>
> We are bound by the terms and conditions of the Plan, and must administer the Plan in accordance with those terms and conditions. If you can obtain a revised

---

[5] In November 2008, Dr. DeFrancisco administered a mental examination of Howington and diagnosed pain disorder related to diabetic neuropathy and major depressive disorder. He assessed Howington's functional limitations as moderate to marked except one area of function that was assessed as mildly limited. (Doc. 72, Exhibit A, pp. 20-32) Dr. DeFrancisco also states that in 2006, he diagnosed Howington with an anxiety disorder and depressive disorder. (*Id.*, p. 20) Dr. DeFrancisco stated that Howington left his job in October 2007 because he was unable to work. (*Id.*, p. 27) When asked "if you have sufficient information to form an opinion within a reasonable degree of medical or psychological probability as to past limitations, on what date were the limitation you found above first present?", Dr. DeFrancisco answered "Oct '07". (*Id.*, p. 25)

[6] In December 2008, Dr. Friej diagnosed peripheral neuropathy, identified the functional limitations resulting therefrom, and indicated that the limitation has been present since 2000. (Doc. 72, Exhibit A, p. 19)

[7] In February 2007, Dr. Szymoniak recommended "an extra-depth shoe", gave Howington a note exempting him from wearing steel-toed boots, and recommended a gradual increase in the current dose of pain medication. (Doc. 72, Exhibit A, p. 33)

5

> award letter from Social Security, RockTenn will certainly review your eligibility for a disability pension.

(Doc. 78, p. 16)

After the denial of benefits, Howington filed a motion to reopen this action and the motion was granted. He filed an amended complaint against Smurfit and the Pension Plan on April 17, 2013. (Doc. 72) Smurfit and the Pension Plan filed their answers. (Doc. 73) The parties have now filed their respective motions for summary judgment.

II. The Pension Plan and the Plan Administrator

The Pension Plan is self-funded. (Doc. 83, ¶ 1) The Pension Plan's assets are held in a trust that is funded by irrevocable periodic contributions. Benefits are paid by the trust. (*Id.*) The manner of funding the Pension Plan does not allow for an independent medical determination by the Plan Administrator, Smurfit. (*Id.*, ¶ 10) Therefore, Smurfit does not have medical staff in the benefits department and does not independently review medical records to make disability determination, but instead relies upon and adopts the Social Security Administration's disability decisions. (*Id.*, ¶¶ 1, 9)

Smurfit is the Plan Administrator and there are no third-party administrators. (Doc. 83, ¶ 1) Smurfit uses the SSA's decision, although not specifically required by the written Pension Plan, as to the date of onset of disability to determine whether a claimant became disabled during the claimant's employment with Smurfit. (*Id.*, ¶ 11)

Section 5.16 of the Pension Plan defines disability as follows:

> Disability Defined. Except as otherwise provided in a Supplement, a Member who becomes disabled while in the active employment of the Company shall be deemed to be disabled for purposes of the Plan if through an unavoidable cause: (a) he has been disabled by illness or injury so as to be incapable of engaging in any occupation or employment for remuneration or profit; (b) such disability shall have been continued for a period of at least five consecutive months, and (c) the Member has received a federal Social Security Disability award or a premium

> waiver or death benefit only continuation coverage under the Company's life insurance carrier. For purposes of this Section 5.16, the phrase "active employment" means that on the date of onset of disability, the Member (i) was on the active payroll of the Employer; and (ii) was not on a leave of absence as defined under Article III.

(Doc. 28-3, p. 33, Pension Plan p. 23)

Article XI of the Plan provides for "Administration of the Plan" and Section 11.1 provides for an Administrative Committee of at least three members to serve as the Plan Administrator.  Article XI sets forth, in part, as follows:

> Section 11.2 Committee's Powers.  The Committee shall have such powers as may be necessary to discharge its duties hereunder, including, but not limited to, the following powers, rights, discretion and duties:
>
> 11.2(a)   Interpretation of Plan and Trust Fund   The Committee shall have the power, right and duty to construe and interpret the Plan and Trust Fund provisions in its discretion and to determine all questions . . . including . . . eligibility for Plan benefits and the rights of Employees . . . to benefits under the Plan . . .
>
> 11.2(c)   Benefit Determinations. The Committee shall have the power, right and duty to make determinations as to the rights of Employees, Members, Beneficiaries and other persons to benefits under the Plan and to afford any Member or Beneficiary dissatisfied with such determination with rights pursuant to a claims procedure adopted by the Committee.

(Doc. 83-1, p. 46)

As to the Claims Procedure, the Pension Plan sets forth in relevant part, as follows:

> 11.5(a) Each person eligible for a benefit under the Plan will make a claim for his or her benefit by submitting an appropriate form to the Committee.  Each such person will also furnish the Committee with such documents, evidence, data, or information in support of his or her claim as the Committee considers necessary or desirable.

(Doc. 83-1, p. 48)   The Pension Plan also provides for a review if the claim is denied (*Id*.).

> In reviewing a denied claim the reviewer shall take into consideration all comments, documents, records, and other information submitted by the claimant

> in support of the claim, without regard to whether such information was submitted or considered in the initial benefit determination.

(*Id.*, p. 49 at § 11.5(d))

III. Conclusions of law

    A. Summary judgment standard

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If a party asserts "that a fact cannot be or is genuinely disputed", the party must

> (A) cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A)(B).

The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Clark,* 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986)).

Once the moving party has satisfied its responsibility, the burden shifts to the nonmovant to show the existence of a genuine issue of material fact. *Id.* "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and

making credibility determination of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986)); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-159, 90 S.Ct. 1598, 1608-1609 (1970). However, "[a] moving party is entitled to summary judgment if the nonmoving party has 'failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.'" *In re Walker*, 48 F. 3d 1161, 1163 (11th Cir. 1995) (quoting *Celotex Corp.*, 477 U.S. at 323, 106 S. Ct. at 2552).

Overall, the court must "resolve all issues of material fact in favor of the [non-movant], and then determine the legal question of whether the [movant] is entitled to judgment as a matter of law under that version of the facts." *McDowell v. Brown*, 392 F.3d 1283, 1288 (11th Cir. 2004) (citing *Durruthy v. Pastor*, 351 F.3d 1080, 1084 (11th Cir. 2003)).

However, the mere existence of any factual dispute will not automatically necessitate denial of a motion for summary judgment; rather, only factual disputes that are material preclude entry of summary judgment. *Lofton v. Secretary of Dept. of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004). "An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. It is genuine if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 807 (11th Cir. 2010) (citation omitted). Also, "what is considered to be 'facts' at the summary judgment stage may not turn out to be the actual facts if the case goes to trial, but those are the facts at this stage of the proceeding for summary judgment purposes." *Cottrell v. Caldwell*, 85 F.3d 1480, 1486 (11th Cir. 1996).

    B. <u>The ERISA standard of review</u>

"ERISA does not set out standards under which district courts must review an administrator's decision to deny benefits." *Doyle v. Liberty Life Assur. Co. of Boston*, 542 F.3d 1352, 1355 (11th Cir. 2008) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109, 109 S.Ct. 948, 953, 103 L.Ed.2d 80 (1989)).  The Court of Appeals for the Eleventh Circuit developed a six-step review process which was modified in response to the decision in *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 S. Ct. 2343 (2008).  After *Glenn*, this circuit no longer requires district courts to apply a heightened standard of review to a conflicted plan administrator's decision (the sixth step). *Doyle*, 542 F. 3d at 1360. [8]

Eliminating the heightened standard of review in the sixth step, the review process proceeds as follows:

> (1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, end inquiry and affirm the decision.
>
> (2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, then end the judicial inquiry and reverse the decision.
>
> (3) If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).
>
> (4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

---

[8] Now, "the existence of a conflict of interest should merely be a factor for the district court to take into account when determining whether an administrator's decision was arbitrary and capricious." *Doyle,* 542 F. 3d at 1360.  Thus, while this court "must take into account an administrative conflict when determining whether an administrator's decision was arbitrary and capricious, the burden remains on the plaintiff to show the decision was arbitrary; it is not the defendant's burden to prove its decision was not tainted by self-interest." *Id*.

(5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Blankenship v. Metropolitan Life Ins. Co.*, 644 F. 3d 1350, 1355 (11th Cir. 2011) cert. denied, 132 S. Ct. 849 (2011) (amending the sixth step).

Smurfit is unambiguously and expressly vested with discretion to administer the Pension Plan. *See Kirwan v. Marriott Corp.*, 10 F.3d 784, 789 (11th Cir.1994). Therefore, assuming for purpose of this order, that Smurfit's decision is "*de novo* wrong", the court must apply the deferential arbitrary and capricious standard and determine whether Smurfit had "a reasonable basis for the decision, based upon the facts as known to [Smurfit] at the time the decision was made." *Jett v. Blue Cross & Blue Shield of Ala., Inc.*, 890 F.2d 1137, 1139 (11th Cir. 1989); *Blankenship*, 644 F. 3d at 1355; *Firestone Tire & Rubber, Co.*, 489 U.S. at 111, 109 S. Ct. 948; *Hunt v. Hawthorne Assocs., Inc.*, 119 F.3d 888, 912 (11th Cir.1997) ("We have interpreted *Firestone* to mandate an arbitrary and capricious standard of review, which is often used interchangeably with an abuse of discretion standard, if the administrator has discretionary authority to make eligibility determinations or to construe disputed terms of the plan.") (citing *Jett*, 890 F.2d at 1139). Since Smurfit was given discretion to construe the terms of the Pension Plan and to make eligibility determinations, its decision "will not be disturbed if reasonable." *Conkright v. Frommert*, 130 S. Ct. 1640, 1651 (2010) (quoting *Firestone*, 489 U.S. at 111, 109 S. Ct. 948). Also, the Smurfit Pension Plan benefits are paid from the separately funded irrevocable trust fund; therefore, Smurfit does not have a conflict of interest. *Doyle,* 542 F. 3d at 1360. Thus, the analysis begins at step three and ends at step four.

However, under this framework, Howington bears the burden of proving that he is

disabled and that Smurfit's decision is wrong. *Herring v. Aetna Life Ins. Co.,* 517 Fed.Appx. 897, 899 (11th Cir. 2013) (citing *Glazer v. Reliance Standard Life Ins. Co.,* 524 F.3d 1241, 1247 (11th Cir. 2008)).  To meet this burden, he must show that Smurfit's decision to deny his early disability retirement benefits was "arbitrary and capricious; that is, [without] reasonable grounds" in support. *Id.* at 899.

    C.  <u>Analysis</u>

This matter is again before the court on the parties' motions for summary judgment after remand to Smurfit for further consideration of Howington's ERISA claim to disability benefits. Smurfit previously, and again, denied disability benefits to Howington because the onset date of disability, as determined by the Social Security Administration, was October 28, 2007 and Howington's last day of employment with Smurfit was September 27, 2007.  As explained in the court's prior order (Doc. 59), the Pension Plan requires that in order to qualify for disability benefits, Howington must, inter alia, have been actively employed when he became disabled and have received a federal Social Security Disability award.  The Pension Plan does not require that the onset date be determined by the SSA.  However, Smurfit relies on the SSA determination to establish the onset date.

At the trial held prior to remand (Doc. 66), Howington presented evidence that he had received an SSD award, but had mistakenly indicated in the Social Security application that his last day employed with Smurfit was October 28, 2007. [9]  Based on this incorrect representation, the SSA found that October 28, 2007, was Howington's last date of substantial gainful employment.  Howington argued that his onset date of disability was also based on this erroneous date.

---

[9] Smurfit agrees this date was incorrect.

Smurfit's position at trial was not to quarrel with Howington's allegation of clerical error, but rather to hold firm that they will only look to the SSD award determination for an onset date.[10]  Smurfit explained that it does not have medical staff to evaluate medical records, thus it will not consider any evidence of an onset date that may differ from the SSD award.

After fully considering the evidence of record, this court determined that the case should be remanded for additional review by Smurfit, because Smurfit had not fulfilled its fiduciary duty to fully investigate Howington's claim.  However, despite the court's determination that it was arbitrary and capricious for Smurfit not to conduct some investigation into Howington's claim of clerical mistake, Smurfit has again refused to conduct any investigation.  Instead, Smurfit responded to the court's order of remand by simply saying we do not, and will not, process claims in that manner.

On summary judgment, Smurfit has reiterated as its primary argument its disagreement with the court's prior determination.  However, Smurfit has also, presumably without a medical team of advisors, evaluated the evidence submitted by Howington in support of his claimed onset date.  Thus, although Smurfit has failed in its fiduciary duty to administratively consider whether the onset date was a clerical error,[11] Smurfit has pointed to "reasonable grounds" in its summary judgment motion to support the denial of benefits. *Blankenship,* 644 F. 3d at 1355.  Specifically, Smurfit points to medical evidence showing an onset date of October 2007[12] and the failure of

---

[10] Smurfit's Pension Plan provides for an appeal process and invites the claimant to provide documentation that supports his claim.

[11] Howington "is precluded from bringing a breach of fiduciary duty claim in conjunction with a wrongful denial of benefits claim." *Capone v. Aetna Life Ins. Co.*, 592 F.3d 1189, 1199 (11th Cir. 2010).   However, Smurfit's "responsibilities as a fiduciary illustrates the proper standard of investigation." (*Id.*) (internal citation omitted).

[12] Dr. DeFrancisco's report of November 18, 2008, indicates that Howington had (Continued)

Howington to claim short term disability on September 27, 2007, before he left his employment at Smurfit.[13]  *Id*. at 1354 ("Review of the plan administrator's denial of benefits is limited to consideration of the material available to the administrator at the time it made its decision.") (citing *Jett*, 890 F.2d at 1140).   The court agrees that this evidence, although not cited or relied upon by Smurfit in its administrative denial, provides a rational basis to determine that the onset date of disability did not coincide with Howington's active employment with Smurfit.

IV.  Conclusion

In accordance with the foregoing, Smurfit's and the Pension Plan's motion for summary judgment is GRANTED and Howington's motion for summary judgment is DENIED.

**DONE** and **ORDERED** this 30th day of September 2013.

 s / Kristi K DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**

---

limitations as of "Oct. '07", with a notation of "left work".  Dr. Szymoniak did not find Howington unable to work, but instead recommended an exemption from wearing steel-toed boots.  Dr. Freij found functional limitations that had been present since 2000. Thus, Howington worked for seven years with these limitations.

[13]  At trial, the evidence established that Howington had notice that he would no longer be employed as of September 28, 2007.  He testified that about two weeks before the change in ownership, he attended a job fair and applied for work with Georgia Pacific.  He testified that "someone" from Georgia Pacific called him because he could read that information on his caller identification, but he did not return the call. (Doc. 66, p. 5-6, trial transcript)